UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kristina Jean Powers,

        Plaintiff,

v.

Wabasha-Kellog Independent
School District #811,

        Defendant.

Civil No. 10-4678 (MJD/AJB)

**REPORT & RECOMMENDATION**

Plaintiff Kristina Jean Powers, 67178-155th Ave., Wabasha, MN 55981, pro se;

Marlene S. Garvis, Esq., Jardine Logan & O'Brien PLLP, 8519 Eagle Point Blvd. Ste. 100, Lake Elmo, MN 55042, for defendant Wabasha-Kellogg Independent School District #811.

## I.   INTRODUCTION

Defendant Wabasha-Independent School District #811 (the "District") employed Plaintiff Kristina Jean Powers. Powers alleges she was retaliated against for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964. This matter is before the Court, Chief Magistrate Judge Arthur J. Boylan, on the District's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). [Docket No. 5.] The case has been referred to the magistrate judge for report and recommendation under 28 U.S.C. § 636. [Docket No. 15.] A hearing was held on the motion on May 23, 2011. Plaintiff

appeared pro se.  Marlene S. Garvis, Esq. appeared on behalf of Defendant.  For the reasons discussed below, the magistrate judge recommends that the District's motion to dismiss be granted.

## II.     BACKGROUND

Powers began working for the District in May 2006 as an assistant for its childcare program, then known as TAPS.  (Compl. [Docket No. 1], Ex. 1 at 1.)  During her employment, she experienced problems with the lead childcare assistant for the TAPS program, Bonnie Lehnartz.  (Id. at 1-2.)  Powers claims that Lehnartz undermined her authority with the children, making it difficult for her to perform her job.  (Id.)  Among other things, she alleges that Lehnartz, who was in charge of scheduling, favored another assistant by giving her more hours.  (Id.)  Powers met with her immediate supervisor, Kathy Skold, to discuss these problems.  In response, Skold tried to "push" Powers to work from home.  (Id. at 4.)

On October 19, 2007, Powers met with the District's superintendent, James Freihammer, to present a "formal hostile work environment/discrimination grievance" relating to what she perceived was discriminatory treatment from Lehnartz and Skold.  (Id.)  Powers claims that Freihammer never addressed her grievance, and that her working conditions thereafter deteriorated.  (Id. at 4-7; Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Mem.") [Docket No. 11] at 10-13.)

Powers goes on to say that she became "increasingly uncomfortable" with Freihammer's behavior towards her, citing incidents such as Freihammer calling her "baby," standing next to her so that their arms touched, and staring at her.  (Compl., Ex. 1

at 13.)  In October 2008, Powers told Freihammer that "his behavior towards [her] was not appropriate for a married man."  (Id. at 58.)  Over the next several weeks, Freihammer "steadily became enraged" with Powers.  (Id. at 59.)  On December 8, 2008, Freihammer "went into an uncontrollable fit of rage" and Powers quit her job.  (Id. at 61.)

Before Powers left, she spoke with Diane Geary, a paraprofessional with the District and a union representative.  Powers told her that she was considering filing "a sexual harassment charge/complaint" against Freihammer.  (Id. at 62.)

On February 12, 2009, Freihammer petitioned the Wabasha County District Court for a harassment restraining order ("HRO") against Powers.  (Aff. of Mark K. Hellie ("Hellie Aff.") [Docket No. 8], Ex. 1.)  After a contested hearing, including nearly three days of testimony, the district court granted Freihammer's petition for an HRO and prohibited Powers from contacting Freihammer and his family.  (Id., Ex. 2.)  The district court found "overwhelming" evidence that Powers "engaged in a pattern of sending communications" to Freihammer that "falsely suggested a romantic relationship" with him and "falsely suggested sexual harassment" by him.  (Id. at 317.)  Powers appealed the district court's decision, and the Minnesota Court of Appeals affirmed.  (Id., Ex. 5.)

Powers than petitioned the Minnesota Supreme Court for review of the court of appeals' decision.  (Id., Ex. 6.)  On July 15, 2010, Freihammer filed a response to Powers's petition (id., Ex.7), in which he stated, "Powers also sent similar communications to the School Board about Freihammer."  (Compl. ¶ 18.)  Powers says this statement is "the focus of this lawsuit."  (Id. ¶ 18.)  The Minnesota Supreme Court

3

ultimately denied Powers's petition for review. (Hellie Aff., Ex. 8.) The District was not a party to the HRO litigation.

On August 18, 2010, Powers filed a charge with the Equal Employment Opportunity Commission ("EEOC") against the District alleging discriminatory conduct. (Compl. ¶ 6.) On August 30, 2010, the EEOC issued a Dismissal and Notice of Rights, notifying Powers that it closed its file on her charge against the District because it was not timely filed and further notifying Powers of her right to sue in court. (Compl.) On November 19, 2010, Powers filed the Complaint in this action alleging that Freihammer's response to her petition to the Minnesota Supreme Court amounted to retaliation by the District in violation of Title VII of the Civil Rights Act of 1964. (Id. ¶ 9.)

### III.   STANDARD OF REVIEW

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint liberally, assuming the facts alleged therein to be true and drawing all reasonable inferences from those facts in the plaintiff's favor. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. Id.

While the Court must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). A plaintiff

must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must contain enough facts to state a claim for relief that is "plausible on its face," id. at 570, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Where the facts alleged do not permit the Court to infer more than the "mere possibility of misconduct," the plaintiff is not entitled to relief. Id. at 1950. "A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6)." Republic Bank of Chi. v. Lighthouse Mgmt. Group, Inc., 2010 WL 2539344, at *3 (D. Minn. July 16, 2010) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999)).

## IV. ANALYSIS

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that (1) she engaged in protected activity, (2) she suffered a materially adverse employment action, and (3) a causal connection exists between the two. Barker v. Mo. Dep't of Corr., 513 F.3d 831, 835 (8th Cir. 2008); Wells v. SCI Mgmt., L.P., 469 F.3d 697, 702 (8th Cir. 2006). The District argues that Powers fails to allege facts sufficient to establish a prima facie case of retaliation. The Court agrees.

### A.     Protected Activity

A plaintiff engages in protected activity when she opposes acts that she has a "good faith, objectively reasonable belief" violate Title VII. Barker, 513 F.3d at 834. Powers's Complaint alleges,

> I engaged in protected activity under Title VII of the United States Civil Rights Act of 1964, as amended, and, for purposes of this lawsuit, as defined by various Eighth Circuit Court of Appeals and United States Supreme Court case law.

(Compl. ¶ 9.) The Complaint further alleges,

> The protected activity which triggered the alleged retaliation is defined by Jeseritz v. Potter, 282 F.3d 542 (8th Cir. 2002) (quoting Sherman v. Runyon, 235 F.3d 406, 409) (8th Cir. 2000) and is supported by Crawford v. Metropolitan Government Nashville and Davidson Co., 129 S. Ct. 846 (January 26, 2009). See also Smith v. St. Louis University, 109 F.3d 1261 (1997).

(Id. ¶ 9.) These allegations are no more than legal conclusions and are not entitled to the assumption of truth. See Iqbal, 129 S. Ct. at 1950. Powers must support these allegations with facts that, if true, would allow the Court to reasonably infer that she engaged in protected activity. Conclusory statements and vague references to cases will not do.

Powers attempts to remedy this in her opposition brief by identifying two protected activities—her October 2007 grievance to Freihammer and her December 2008 meeting with Geary. As to the October 2007 grievance, the Court finds that Powers was not opposing an act that she had a good faith, objectively reasonable belief violated Title VII. She filed the grievance to complain about how Lehnartz and Skold treated her, which she admits was due to a "personal issue." (Pl.'s Mem. at 7; Compl., Ex. 1 at 4.) Complaints, however, do not constitute protected activity unless they implicate an

6

illegitimate criterion.  Boone v. City of St. Paul, 2011 WL 1641899, at *5 (D. Minn. May 2, 2011); see also Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002) (plaintiff did not engage in protected activity when she "complained that she was entitled to a pay increase and a change in job title, [but] did not attribute [defendant's] failure to give her a raise or promotion to sex discrimination"); Miller, 2002 WL 1495217, at *8 (plaintiff did not engage in protected activity when he filed a complaint with the defendant's human resources department because he "never claimed race discrimination in this complaint," "confirmed that this [] complaint was not a complaint of race discrimination," and "never suggested that his concerns were race-based").  Powers does not allege that her gender or other illegitimate criterion motivated Lehnartz and Skold's actions.  Thus, the October 2007 grievance cannot form the basis of Powers's retaliation claim.

As to the December 2008 meeting with Geary, Powers contends that this was protected activity because she "was expressing concerns that she *may* have been sexually harassed" and "*may* have been illegally discriminated against because of her gender." (Pl.'s Mem at 9 (emphasis added).)  Such equivocal averments do not permit the Court to infer more than the mere possibility that Powers *did* believe that she was sexually harassed or discriminated against, let alone that such belief was objectively reasonable. Iqbal requires more than the mere possibility that the District acted unlawfully.  Moreover, Powers never sets forth a claim of sexual harassment or gender discrimination in her Complaint.  (See Compl. at 4-5.)  In any event, even assuming that the meeting

with Geary constituted protected activity, Powers fails to state a claim for retaliation because she cannot articulate a materially adverse employment action.

### B.  Materially Adverse Employment Action

To determine whether an action is materially adverse, the court considers "whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions." Boone, 2011 WL 1641899, at *4 (citing Weger v. City of Ladue, 500 F.3d 710, 726 (8th Cir. 2007)); see also Burlington N. & Santa Fe Ry. Co., 548 U.S. 53, 68 (2006).  Powers alleges only "one specific incident of post-employment retaliation by the [District] on July 15, 2010"—when Freihammer filed his response to Powers's petition to the Minnesota Supreme Court, in which he stated, "Powers also sent similar communications to the School Board about Freihammer."  (Compl. ¶¶ 12, 18.)

As an initial matter, the District was not a party to the HRO litigation. Freihammer's filing of his response brief is not an action that can be attributed to the District.  Moreover, it is difficult to understand how a brief in a separate litigation to which the employer is not even a party would dissuade a reasonable employee from making a discrimination claim.  In any event, Powers does not allege sufficient facts in her Complaint that would allow the Court to reasonably make such an inference.

In her opposition brief, Powers attempts to clarify her claim by explaining that the statement—"Powers also sent similar communications to the School Board about Freihammer"—"encompasses an issue for which [the District] is solely responsible," namely, the District's act of allowing Freihammer to use certain of her emails in the HRO

8

litigation.[1] (Pl.'s Mem. at 40; see id. at 16-31; Compl. ¶ 20.) This allegation is confusing. Essentially, Powers claims that the District is somehow responsible for Freihammer's use of her emails in the HRO litigation. Though Powers alleges this, her Complaint does not contain sufficient factual matter that would permit the Court to make that inference. Simply put, Powers does not state a plausible claim for relief. Moreover, even if the District was responsible, Powers does not allege sufficient facts to show that a reasonable plaintiff in her position would be dissuaded in that circumstance.

### C. Causal Connection

To establish a causal connection, the plaintiff must present evidence that gives rise to an inference of retaliatory motive. Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002). The Court finds that Powers has not alleged facts to establish this element. As to the claimed protected activity in October 2007 (the grievance), Powers fails to set forth facts showing that it was causally connected to the District's act of allowing the use of her emails in the HRO litigation, which occurred more than one year later. See id. at 897 (two month interval between the protected activity and adverse action "so dilutes any inference of causation . . . as a matter of law"); Boone, 2011 WL 1641899, at *4-5. As to the claimed protected activity in December 2008 (the meeting with Geary), the Court cannot infer from Powers's factual allegations that the District allowed the use of her emails in retaliation for her meeting with Geary.

---

[1] These emails were sent to the school board chairman, and they accuse Freihammer of unlawful conduct and describe a romantic relationship between him and Powers. (Compl. ¶ 22.) Powers goes on at length to explain that she did not send the emails, but that issue is not relevant in determining the District's motion.

## V. **RECOMMENDATION**

For the reasons set forth above, Powers fails to adequately plead a prima facie case of retaliation and her claim must fail as a matter of law. Accordingly, this Court **RECOMMENDS** that the defendant's motion to dismiss [Docket No. 5] be **GRANTED** and that the complaint in this matter be **DISMISSED** with prejudice.


Dated: June 16, 2011                             s/ Arthur J. Boylan
                                        Chief Magistrate Judge Arthur J. Boylan
                                        United States District Court


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before June 30, 2011.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within fourteen days of receipt of the Report.